ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
SARAH R. HOLLOWAY (SBN 254134)
sholloway@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

*Attorneys for Plaintiff*
Timothy Dugger, an Individual

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIMOTHY DUGGER, individually and on behalf of a class of similarly situated individuals, | Case No: |
| | <u>CLASS ACTION</u> |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL RACKETEERING, CALIFORNIA FALSE ADVERTISING, AND CALIFORNIA UNFAIR COMPETITION LAWS** |
| v. | |
| KARS4KIDS INC. and OORAH INC., inclusive, | |
| Defendants. | <u>**DEMAND FOR JURY TRIAL**</u> |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**CLASS ACTION COMPLAINT**

Plaintiff Timothy Dugger ("Plaintiff") brings this putative class action against Kars4Kids Inc. ("Kars4Kids") and Oorah Inc. ("Oorah") (collectively, "Defendants") on behalf of a proposed nationwide Class consisting of all persons and entities exposed to Kars4Kids' TV, radio, or Internet advertisements who donated a vehicle to Kars4Kids, except those located within Pennsylvania and Oregon; and a proposed California sub-class consisting of all persons and entities exposed to Kars4Kids' TV, radio, or Internet advertisements who donated a vehicle to Kars4Kids within California (collectively, the "Class" or "Classes"). Plaintiff asserts claims against Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; California False Advertising Law ("FAL"), California Business and Professions Code § 17500 *et seq.*; and California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*

Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through his attorneys, which included, among other things, a review of Defendants' public statements and advertisements; documents, testimony, and arguments made or produced by Defendants in civil actions; media reports and public documents relating to investigations and actions by state attorney generals; Defendants' publicly available tax forms and records; discussions with experts and investigators; and other commentary, analysis, and publicly disclosed reports and information about Defendants. Plaintiff's investigation is continuing and many relevant facts are known only to or are exclusively within the custody and control of Defendants. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be obtained after a reasonable opportunity for formal discovery.

## I.   NATURE OF THE CASE

1.   Plaintiff brings this action on behalf of the proposed Classes to seek redress for Defendants' scheme to deceive unwitting donors to donate their vehicles to Kars4Kids for undisclosed and misrepresented purposes. As alleged herein, Defendants publicly disseminated false and misleading advertisements soliciting vehicle donations to purportedly help local needy

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

children, regardless of any racial, ethnic, or religious affiliation, inducing Plaintiff and Class members to donate their vehicles under false pretenses. Instead, Defendants used those donations to fund a separate entity, Oorah, and its promotion of orthodox ideology to Jewish families in New York and New Jersey. Defendants also used the vast majority of donation proceeds to fund their own significant expenses and investments.

2. Defendants' conduct has spawned multiple government investigations by state attorney generals and private lawsuits into the misleading nature of their deceptive ads. In 2009, for instance, Defendants settled two separate actions with the Pennsylvania and Oregon state attorney generals, who justifiably accused them of disseminating misleading advertisements, and failing to properly inform donors that Oorah (not Kars4Kids) would use their donations almost exclusively to fund its orthodox "outreach" activities directed solely at Jewish families. As part of those settlements, Defendants were required to include additional disclosures in their ads and solicitations in those states informing potential donors about Defendants' purpose and use of their donations.

3. Defendants were again investigated for the same conduct by the Minnesota state attorney general in 2017, which similarly found that, while not disclosed in their ads, over 90% of Kars4Kids' charitable expenditures were simply transferred to Oorah "to promote Orthodox Judaism, primarily to New Jersey and New York children." In 2021, a California donor brought a lawsuit against Defendants for false and misleading advertising relating to their deceptive solicitation commercials. The court there found, under facts nearly identical to those here, that "a reasonable jury could conclude that Kars4Kids' advertising was misleading because it indicated donations would benefit needy children nationwide when it actually benefited primarily children of a particular faith in a particular geographic location."

4. Despite these investigations and lawsuits, Defendants have continued to broadcast their deceptive ads throughout the country, including in California. The reason is clear: Kars4Kids would receive significantly less donations, and Oorah significantly less funding for its orthodox "outreach" activities, if donors knew the truth about Defendants' scheme.

5.     Defendant Oorah, a New Jersey organization dedicated to promoting orthodox Jewish ideology, was the creator and architect of the fraudulent scheme.[1] Oorah, under the direction of its President and CEO, Rabbi Eliyohu Mintz ("Mintz"), created Kars4Kids and its misleading ads. Kars4Kids functioned as Oorah's internal fundraising arm for the purpose of soliciting car donations to fund its orthodox "outreach" and proselytizing activities. Oorah and Mintz later spun off Kars4Kids as a purportedly separate "charity," also run by Mintz. Despite this separation on paper, Kars4Kids' purpose remained the same – to solicit car donations to fund Oorah.

6.     Described by many as "annoying," Kars4Kids' catchy "jingle" advertisements, which encourage people to "donate [their] car today" for "a vacation voucher and a tax deduction" "BECAUSE KIDS ARE OUR FUTURE," are broadcast on TV and radio stations and on the Internet throughout the country, including California. These ads are clearly designed to make potential donors believe that Kars4Kids will use their car donation to benefit needy or disadvantaged local children without regard to any particular racial, ethnic, or religious affiliation. What the ads fail to inform donors, however, is that their donations are instead simply transferred to Oorah to fund its promotion of orthodox ideology to Jewish families, to the exclusion of all others, predominantly in New York and New Jersey.  The ads also fail to inform donors that the vast majority of donation proceeds are not used for *any* charitable purpose and are instead retained by Kars4Kids and Oorah to fund their significant expenses and investments.

7.     Like millions of others in California and nationwide, Plaintiff saw and heard these ubiquitous commercials running as TV ads multiple times a day.  Believing Kars4Kids' representations that it would use his donation to help needy or disadvantaged children, particularly in California, Plaintiff, like thousands of other unwitting donors, donated his 1998 Toyota pickup truck to Kars4Kids. Plaintiff would not have donated his vehicle to Kars4Kids had he known the truth about how it and Oorah would use his donation.

---

[1] Orthodox Judaism adheres to a strict interpretation and application of the laws and ethics promulgated in the Talmud and later rabbinical tradition.  It requires strict adherence to such Jewish traditions as kosher dietary laws, sexual purity laws, and gender segregation in the synagogue, among others.

8.    While promoting strict tenets of Judaism in a particular geographic area may be a worthy endeavor for donors *intending* to do so, Defendants designed their ads to conceal this true purpose from potential donors. By failing to inform potential donors that their car donations would be used almost exclusively to: (i) fund Oorah and its orthodox "outreach" activities; (ii) benefit families of only one religion in one geographic area; and (ii) fund Kars4Kids' *and* Oorah's significant expenses and investments, Defendants' ads misled and deceived thousands of donors, who, like Plaintiff, would not have donated had they known the truth about Defendants' scheme.

## II.    PARTIES

9.    Plaintiff Timothy Dugger is a citizen of California and resides in the city of Lower Lake, California. Plaintiff donated his vehicle, a 1988 Toyota pickup truck, to Kars4Kids in or around November 2023 and suffered losses because of Defendants' conduct.

10.    Defendant Oorah, previously known as Oorah Kiruv Rechokim Fund, Inc., is a 501(c)(3) tax-exempt organization and is registered as a domestic non-profit corporation under the laws of New Jersey. Its headquarters are located at 1805 Swarthmore Avenue, Lakewood, New Jersey 08701. Since at least 2018, Oorah has been the controlling entity for numerous subsidiaries, including Oorah Retreat LLC (outreach activities), Oorah Resort LLC (outreach activities), Millenium Lodge LLC (real estate activities), and Rutger Equities LLC (real estate activities) – all sharing the same headquarters as Oorah and Kars4Kids.[2]

11.    Oorah is no stranger to litigation.  In addition to multiple investigations by state attorney generals and an individual lawsuit concerning Defendants' misleading and deceptive advertising, Oorah has also been targeted by several other lawsuits relating to its purported "outreach" activities.  One such lawsuit accused Oorah of secretly purchasing a small synagogue on Staten Island in 2007 to obtain tax-exempt status as a religious organization, and thereby avoid filing a public tax return and public scrutiny of its dealings.  According to NY Jewish Week, an independent newspaper serving the New York Jewish community, Young Israel of Eltingville

---

[2] Other "related" entities listed on Oorah's tax forms include Kars4Kids, Congregation Oorah, and Junk For Joy Inc. – all sharing the same headquarters as Oorah.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

("Young Israel"), the synagogue's prior owner, accused Oorah of improperly purchasing the synagogue's building and creating a fake synagogue called Congregation Oorah, also run by Mintz, to secure the tax-exempt status.  Young Israel alleged that Congregation Oorah did not, however, provide religious services at the synagogue, and that its falsely obtained tax-exempt status instead allowed Oorah to shield its "questionable financial dealings" from public scrutiny.[3]

12.    Oorah registered with the California Secretary of State as a foreign corporation doing business in California in 2021. Oorah is a "person," as that term is defined in 18 U.S.C. § 1961(3), who engaged in racketeering activities, and is likewise a member of the "enterprise," as that term is defined in 18 U.S.C. § 1961(4), through which the racketeering activities were conducted.

13.    Defendant Kars4Kids, also referred to as Kars 4 Kids Inc., is a 501(c)(3) tax-exempt organization and is registered as a domestic non-profit corporation under the laws of New Jersey. Its headquarters are located at 1805 Swarthmore Avenue, Lakewood, New Jersey 08701 – the same headquarters as Oorah.  Since at least 2020, Kars4Kids Inc. has been the controlling organization for numerous subsidiaries, including: K4K LLC (real estate activities); K4K Media LLC (advertising activities); CarsandMore2001 LLC (holding company); JFY Capital LLC (holding company); Rolling Brook LLC (real estate activities); Charitable Holdings LLC (real estate activities); RE 4 Kids LLC (real estate activities); Kars4Kids Holdings LLC (real estate activities); K4K Ltd. (back office services in Israel); and Kars Resources Ltd. (back office services in Israel) – all sharing the same headquarters as Oorah and Kars4Kids.

14.    Kars4Kids registered with the California Secretary of State as a foreign corporation doing business in California in 2017. Kars4Kids is a "person," as that term is defined in 18 U.S.C. § 1961(3), who engaged in racketeering activities, and is likewise a member of the "enterprise," as

---

[3] *See* NY Jewish Week, "*Young Israel Accuses Kars4Kids Parent Charity of Tax Fraud*" (Nov. 22, 2016) (available at: https://www.jta.org/2016/11/22/ny/young-israel-accuses-kars4kids-parent-charity-of-tax-fraud#:~:text=Young%20Israel%20of%20Eltingville%20is%20claiming%20that%20Oorah,not%20have%20to%20file%20an%20annual%20tax%20return.%29); NY Jewish Week, "*Young Israel Claims Hostile Takeover Bid by Kars4Kids Parent Parent Org.*" (Jun. 29, 2016) (available at: https://www.jta.org/2016/06/29/ny/young-israel-claims-hostile-takeover-bid-by-kars4kids-parent-org).

that term is defined in 18 U.S.C. § 1961(4), through which the racketeering activities were conducted.

15.     Kars4Kids and Oorah are referred to collectively herein as "Defendants."

### III.     JURISDICTION AND VENUE

16.     This action arises under 18 U.S.C. § 1961 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 because the claims arise under RICO. Similarly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under federal law.

17.     This Court also has jurisdiction over this matter because it is a class action in which, on information and belief, the damages exceed $5 million, exclusive of interest and costs, the number of class members exceeds 100, and as demonstrated above and below, the parties are diverse pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

18.     This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367.

19.     This Court may exercise jurisdiction over Defendants because they have continuous and systematic contacts with this District, do substantial business in this State and within this District, and engage in unlawful practices in this District as described in this Complaint, so as to subject themselves to personal jurisdiction in this District, thus rendering the exercise of jurisdiction by this Court proper and necessary. Specifically, Kars4Kids purposely directed its misleading and deceptive TV, radio, and Internet solicitations to California residents as described herein; received and processed tens of thousands of car donations from California residents; and transferred the funds received from California donations to Defendant Oorah, who used those funds for misrepresented and undisclosed purposes. Thus, a substantial portion of Defendants' fraudulent activities were directed at and occurred in California.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred while he resided in this judicial District, including Defendants' misleading solicitations and Plaintiff's vehicle donation.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

## IV.    THE RICO ENTERPRISE SCHEME

2      21.    Defendants created and used a racketeering enterprise through which they employed

3  deceptive and misleading advertisements to solicit vehicle donations under false pretenses to fund

4  Oorah and its religious "outreach" activities. Defendants used both wires and mails of interstate

5  commerce to carry out their common scheme. Through this pattern of racketeering, Defendants

6  deceived tens of thousands of unwitting donors into donating their vehicles to surreptitiously fund

7  Oorah.

8      **A.  Oorah Created Kars4Kids to Solicit Charitable Donations on Its Behalf**

9      22.    Oorah, which means "awaken" in Hebrew, is an orthodox Jewish outreach organization

10  headquartered in New Jersey.  Its stated mission is to develop orthodox Jewish children and

11  families.  According to an October 2016 article in the *Forward,* which covers news for a Jewish-

12  American audience, Oorah "specializes in outreach to non-observant Jews [by] operating summer

13  camps and other programs that seek to make non-Orthodox Jews more observant." Oorah's

14  outreach activities are directed solely to those of Jewish faith, excluding all others.  It has no other

15  purpose.

16      23.    Oorah created Kars4Kids as its internal fundraising arm and began "doing business as"

17  ("d/b/a") Kars4Kids in 1995. Oorah and its CEO, Mintz, later spun off Kars4Kids as a separate

18  registered organization in 2000 under JOY For Our Youth Inc. ("JOY") (d/b/a/ Kars4Kids), also

19  run by Mintz, to oversee Kars4Kids' fundraising efforts on Oorah's behalf.  JOY changed its name

20  to Kars4Kids Inc. (d/b/a Kars4Kids) in 2014.

21      24.    Despite registering as distinct tax-exempt entities, Kars4Kids and Oorah have continued

22  to operate as a single enterprise with a common motive – to fund Oorah and its unitary outreach

23  activities. The organizations share the same headquarters and office space at 1805 Swarthmore

24  Avenue in Lakewood, New Jersey. They have overlapping staff, including shared administrative

25  personnel and their shared President and CEO, Mintz, the son of their joint founder, Rabbi Chaim

26  Mintz. Many Kars4Kids executives are relatives of Oorah executives. While Kars4Kids describes

27  itself as Oorah's "sister charity," it has admitted in court filings that its "car donation business has

28  ***always*** served as a fundraising arm on behalf of Oorah, Inc. and its predecessor entities," even

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

---

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

after Oorah and Mintz incorporated it under a separate entity.[4] In other words, Kars4Kids' purpose is and always has been to "fund[] Oorah."[5]

25.    To fulfill this purpose, Kars4Kids solicits charitable car donations through TV, radio, and Internet commercials. The Kars4Kids solicitation jingle, which has been described as an "assault on [the] senses," was originally created and produced by Oorah (d/b/a Kars4Kids) and first premiered on radio stations in the New York tri-state area in 1999. Kars4Kids (then operating under JOY) extended the ads to New Jersey's airwaves in 2001, Chicago's in 2004, and California's in 2005. By 2008 (and continuing to this date), the jingle had plagued the nation on major radio broadcast networks such as Clear Channel and CBS, and by 2012, had expanded to online Internet radio and music streaming sites, such as Pandora.

26.    The original Oorah ad included the following jingle: "[sung] One-eight-seven-seven cars for kids; K-A-R-S cars for kids; one-eight-seven-seven cars for kids; donate your car today." The radio ads also state that Kars4Kids is a "recognized 501(c)(3) non-profit organization," is "also at Kars4Kids.org," and that donors will receive a tax deduction and vacation voucher for their donations.

27.    In or around 2013/2014, Kars4Kids expanded its radio ads by introducing a TV commercial featuring a spruced-up version of the ad. The commercial features a children's band dressed in pink pretending to play instruments and singing same the jingle that includes Kars4Kids' name and phone number (1-877-KARS4KIDS) urging people to "donate their cars today" for a vacation voucher and a tax deduction.

28.    Kars4Kids remastered its TV commercial in 2019 to adapt its video to new technology and higher resolution TVs. While the actors changed (as the original actors were no longer

---

[4] All emphasis added unless otherwise specified. Kars4Kids admitted in court filings in *Kars 4 Kids Inc. v. American CAN!*, Case No. 3:14-cv-07770 (D.N.J.), that its purpose has always been to fundraise on Oorah's behalf.

[5] When asked about Kars4Kids' purpose and programs specifically directed at helping California children, Kars4Kids' Chief Operating Officer ("COO") Esti Landau ("Landau") repeatedly testified under oath in *Puterbaugh v. Oorah, Inc.*, Case No. 8:21 cv-01593 (C.D. Cal.), on Kars4Kids' behalf as its Fed. R. Civ. P. 30(b)(6) designated representative, that Kars4Kids simply "funds Oorah."

children), the content and script of the commercial remained unchanged from the prior 2013/2014 version. The full audio of the TV advertisement is as follows:

> "[sung] One-eight-seven-seven cars for kids; K-A-R-S cars for kids; one-eight-seven-seven cars for kids; donate your car today. [spoken] Donate your car at Kars4Kids.org. That's Kars with a K. Pickup is quick and easy. You'll also get a vacation voucher and a tax deduction. [sung] One-eight-seven-seven cars for kids; donate your car today."

29.   Text displayed very briefly on the screen at the end of the commercial states that consumers should donate their car: "BECAUSE KIDS ARE OUR FUTURE," and that they can "Learn how you can make a difference in the life of a child" at "Kars4kids.org/howtohelp."

30.   The website address displayed during the commercial (Kars4kids.org/howtohelp) directs viewers to a webpage that encourages people generally to volunteer as mentors, advocates or by running awareness campaigns. It does not discuss vehicle donations, Kars4Kids' use of donation funds or Oorah.  Kars4Kids also broadcasts its TV commercial to solicit donations online. The Kars4Kids "Official TV Commercial" can be found online at https://www.youtube.com/watch?v=F94DBBJjzko. Kars4Kids uses these same or substantially similar commercials to advertise on TV, radio, and Internet stations throughout the country.

31.   Consumers who hear or view Kars4Kids' solicitation ads can donate vehicles either by calling Kars4Kids or submitting a form online. Either over the phone or online, the donor provides certain information about the vehicle, such as make, model, year, condition, and geographic location. Kars4Kids then performs an internal assessment of the vehicle based on the donor's information and contracts with a local auction house or scrapyard to retrieve and tow the vehicle. If towing service is not available through the auction house or scrapyard, Kars4Kids contracts separately with a towing service to tow and/or store the donated vehicle until it can be received by the auction house or scrapyard. Around 60% of vehicles donated to Kars4Kids nationwide are retrieved and sold by Copart Auto Auction ("Copart"), a national auction house with its own towing service. Copart performs auto auctions daily nationwide and auctions off the donated vehicles on Kars4Kids' behalf. After auctioning donated vehicles, Copart sends Kars4Kids a bulk

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1   check of the sale proceeds, net of Copart's auction fee. Copart sends these bulk checks to

2   Kars4Kids around twice a week.

3       32.    A small number of donated vehicles are also sold at other smaller auction houses around

4   the country on Kars4Kids' behalf, whereby Kars4Kids similarly receives the sale proceeds net of

5   an auction fee. The rest are sold by Kars4Kids to scrapyards for parts.

6       33.    After monetizing donated vehicles through auction or scrapyard sales, Kars4Kids mails

7   donors a receipt indicating the amount of potential tax deduction they can claim for their donation.

8   This amount is typically either the amount the car sold for or $500, whichever is greater. Kars4Kids

9   also sends donors a travel voucher for a three-day, two-night hotel-stay at one of its select

10   locations.

11       34.    Pursuant to California Business and Professions Code §§ 17510.3 and 17510.4, in

12   California, Kars4Kids is also required to provide donors with a "solicitation or sale for charitable

13   purposes card." The card must contain certain information, including "[t]he name and address of

14   the combined campaign, each organization, or fund on behalf of which all or any part of the money

15   collected will be utilized for charitable purposes," or, "[i]f there is no organization or fund, the

16   manner in which the money collected will be utilized for charitable purposes."

17   **B. Defendants' Solicitation Ads Are Deceptive and Misleading**

18       35.    Kars4Kids' solicitation ads ask people to "donate [their] car today" . . . "BECAUSE

19   KIDS ARE OUR FUTURE," claiming that Kars4Kids will provide "quick and easy" pick up of

20   donated cars and will use them to benefit needy kids (*i.e.*, "4 Kids"). By design, the ads do not

21   disclose specifically *how* Kars4Kids will use car donations to help kids, *which* kids the donations

22   will help, or *where* those donations will be used.  Instead, they are clearly designed to make donors

23   believe that Kars4Kids will use their donation to benefit a diverse group of needy children, locally

24   and nationwide, regardless of any racial, ethnic, or religious affiliation.

25       36.    The informational website address provided in the ads (Kars4kids.org/howtohelp) is, by

26   design, similarly vague as to exactly which kids will benefit, where and how, simply encouraging

27   people generally to volunteer as mentors, advocates or by running awareness campaigns.  Only by

28   scrolling all the way down to the fine print that includes Kars4Kids' copyright notation at the very

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    bottom of the page does it eventually vaguely state in small type: "Your donation will benefit

2    Kars4Kids, a national organization dedicated to addressing the educational, material, emotional

3    and spiritual needs of Jewish children and their families."

4        37.    Kars4Kids' main website (Kars4Kids.org), where donors can submit vehicle donation

5    forms online, is even less revealing and woefully inadequate to avoid misleading consumers.

6    Among various information about Kars4Kids' "Fast, Free Pickup" and how donors can "Save

7    Money On Your Taxes," it states only that "[y]our donation supports the youth and educational

8    programs of national nonprofit Kars4Kids and our sister charity Oorah." Directly below, in larger

9    bold print, the website further claims that: "**We don't use a middleman**. By keeping our process

10   in-house, we cut out the extra costs often incurred by other charities. This means a higher

11   percentage of your donation goes to help kids." While the website has other equally vague and

12   misleading pages, it is structured so that donors are not required to view any other pages or

13   disclosures about Kars4Kids' purpose or use of donation proceeds to submit a donation form

14   online.

15       38.    Nothing in Kars4Kids' commercials represents to viewers or listeners that the

16   performers, or the underlying organization, are affiliated with any geographic location, religion or

17   sectarian ideology. By broadcasting on local TV and radio stations, the ads also suggest that at

18   least a reasonable portion, if not a significant portion, of the proceeds will be used to help *local*

19   needy children.  That is actionable.

20       39.    Like Plaintiff, potential donors exposed to these ads would reasonably understand, albeit

21   falsely, that: (i) Kars4Kids uses a significant amount of donation proceeds to help needy or

22   disadvantaged children through its own charitable programs; (ii) donations are used for non-

23   religious serious needs assistance, such as food, shelter, medical attention, medical research, etc.;

24   (iii) donations are used to help children generally, without bias to any racial, ethnic, or religious

25   affiliation or ideology; and (iv) a reasonable percentage of donated funds are used to help children

26   locally – as the ads themselves represent.

27       40.    Kars4Kids' solicitation ads are materially deceptive and misleading. Nowhere in its ads

28   does Kars4Kids inform donors that their donations are instead used almost exclusively to fund

Oorah and its narrow purpose of promoting orthodox ideology to Jewish families, predominantly in New York and New Jersey, and to pay for Kars4Kids' and Oorah's significant expenses and investments.

### 1. Kars4Kids Fails to Inform Donors that It Uses Donations to Fund Oorah and Its Orthodox Outreach Activities

41.   Contrary to its ads, Kars4Kids does not operate any charitable programs or services to support children (or anyone) in California or elsewhere.  Instead, after monetizing car donations through auction and scrapyard sales, Kars4Kids simply transfers the bulk of the proceeds (after covering its own expenses and operations) to Oorah in the form of a purported "grant."

42.   In 2022, for instance, Kars4Kids reported $101,321,704 in revenue from charitable donations.[6]  It used $46,385,027 of that revenue (or 46%) on purported "grants" to third-party organizations for charitable purposes.  Of that amount, $45,880,385 – *or 99% –* of its total purported charitable spending was simply transferred to Oorah.  Kars4Kids used the remaining 54% of donation proceeds to cover its own operating expenses, including over $35 million spent on advertising, and to fill its own reserve coffers and investments.  None was spent on any charitable program run by Kars4Kids in California or elsewhere.

43.   In 2021, Kars4Kids reported $121,549,389 in revenue from charitable donations. It used $66,574,335 of that revenue (or 55%) on purported "grants" to third-party organizations for charitable purposes. Of that amount, $66,271,957 – ***or over 99% –*** of its total purported charitable spending was transferred to Oorah.  Kars4Kids used the remaining 45% of donation proceeds to cover its own operating expenses, including over $36 million spent on advertising, and to fill its own reserve coffers and investments. None was spent on any charitable program run by Kars4Kids in California or elsewhere.

44.   In 2020, Kars4Kids reported $107,313,885 in revenue from charitable donations. It used $44,709,280 of that revenue (or 42%) on purported "grants" to third-party organizations for

---

[6] While Kars4Kids also receives boat, plane, and real estate donations, the vast majority of its charitable donations – at least 90% – are vehicles.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

charitable purposes. Of that amount, $44,398,524 – ***or over 99%*** – of its total purported charitable spending was transferred to Oorah. Kars4Kids used the remaining 58% of donation proceeds to cover its own operating expenses, including over $25 million spent on advertising, and to fill its own reserve coffers and investments. None was spent on any charitable program run by Kars4Kids in California or elsewhere.

45.    In 2019, Kars4Kids reported $72,703,908 in revenue from charitable donations. It used $29,152,149 of that revenue (or 40%) on purported "grants" to third-party organizations for charitable purposes. Of that amount, $28,859,244 – ***or 99%*** – of its total purported charitable spending was transferred to Oorah. Kars4Kids used the remaining 60% of donation proceeds to cover its own operating expenses, including over $23 million spent on advertising, and to fill its own reserve coffers and investments. None was spent on any charitable program run by Kars4Kids in California or elsewhere.

46.    As shown above, ***nearly 100%*** of vehicle donation proceeds purportedly used by Kars4Kids for the purported charitable purpose of "helping kids" generally is, instead, simply funneled to Oorah to fund its orthodox "outreach" activities. Conversely, most of Oorah's reported revenue (around 85% in 2021 and 90% in 2022) comes directly from Kars4Kids. These "grant" transfers are consummated between Defendants through an association-in-fact enterprise with the common purpose of soliciting vehicle donations to secretly fund Oorah. There is no formal grant application process between the two entities.

47.    Once Oorah receives these funds, it has full control over how to use them. Oorah uses a small amount of the funds it receives from Kars4Kids (less than 5%) to provide tuition assistance and summer camp subsidies solely for Jewish children, predominantly in New York and New Jersey, to attend its orthodox summer camps in New York.[7] Indeed, it is Oorah, not Kars4Kids, that runs the "educational, material, emotional and spiritual" programs described in the fine print of Kars4Kids' mission statement.  These programs, run by Oorah and its affiliates, seek to convert

---

[7] Oorah also gives a small amount, less than 1%, to various orthodox Jewish organizations, including Congregation Oorah, "to promote religious education" and "provide assistance to families."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

New York and New Jersey Jewish children and families to orthodox ideologies. They are available only to Jewish families and exclude non-Jewish recipients.

48.   The remaining approximately 95% of donation funds received from Kars4Kids are used by Oorah to cover its own operations and expenses or are placed in Oorah's reserves and investments, which in 2022 amounted to over $195 million in assets.

49.   By representing to donors that their donations would be used to help local needy or disadvantaged children generally, without regard to any racial, ethnic or religious affiliation, while failing to disclose that donations are used instead to support Oorah's orthodox "outreach" activities directed solely at Jewish families, Kars4Kids' ads misled and deceived donors who, like Plaintiff, would not have donated had they known the truth about Defendants' scheme.

### 2.   Kars4Kids Fails to Inform Donors that It Uses Donations to Benefit Only Jewish Families in Primarily in New York and New Jersey

50.   While Kars4Kids broadcasts its ads and accepts car donations nationwide, it fails to inform potential donors that Oorah (not Kars4Kids) uses their donations almost exclusively to benefit only Jewish families a limited geographic area, particularly in New York and New Jersey. According to a 2017 compliance review conducted by the Office of the Attorney General of the State of Minnesota, over 99.9% of the $90 million raised by Kars4Kids from 2012-2014 was spent on charitable programs under the direction and control of Oorah, the two largest programs being its tuition assistance and summer camp programs in the Catskills area of New York for Jewish children. According to the Minnesota Attorney General's report, less than 1% of the $3 million raised from Minnesota donors was spent on charitable programs for Minnesota children.

51.   Other states, including California, fare no better. According to Kars4Kids' COO Landau, of approximately 120,000 cars donated to Kars4Kids in 2021 nationwide (representing $114,439,611 in reported donation proceeds), around 30,000 of them, *or 25%,* were donated in California. That same year, however, Kars4Kids spent only $3,050 in the form of small charitable grants to third-party organizations in California – *less than 0.01%* of its approximate donation proceeds raised from Californians. Kars4Kids (and Oorah) do not have any other programs or services designed or intended to benefit children (or anyone) in California.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

52. A breakdown of Kars4Kids' purported charitable spending, which is entirely in the form of third-party "grants," to help California residents for the years 2019-2022 is as follows:

a. In 2019, Kars4Kids spent $5,950 on grants in California, representing only 0.02% of its total charitable spending.

b. In 2020, Kars4Kids spent $1,500 on grants in California, representing only 0.003% of its total charitable spending.

c. In 2021, Kars4Kids spent $3,050 on grants in California, representing only 0.005% of its total charitable spending.

d. As of January 2022, Kars4Kids had spent $500 on grants that year in California, representing only 0.001% of its total charitable spending.

53. Like Plaintiff, potential donors exposed to Kars4Kids' ads would reasonably believe that it uses a reasonable, if not significant, portion of their donation proceeds to help kids locally within their states, especially in states like California, where Kars4Kids advertises heavily and receives a significant portion (around 25%) of its donations. To the contrary, however, the amount of donation proceeds that Kars4Kids spends in California (and most other states) to help local children is miniscule – less than a tenth of a percent. Instead, it simply funnels the money (*over 99%*) to Oorah to fund its religious orthodox activities in New York and New Jersey.

54. By suggesting to potential donors that their donations would be used, at least in part, to help *local* children, but failing to inform them that donations are, instead, used almost exclusively by a third-party (Oorah) fund its unitary outreach activities, to members of only one religion in one geographic area, Kars4Kids' ads misled and deceived donors who, like Plaintiff, would not have donated had they known the truth about Defendants' scheme.

**3. Kars4Kids Fails to Inform Donors that the Vast Majority of Donations Are Used to Fund Its' and Oorah's Operations and Investments**

55. Kars4Kids' ads are also deceptive and misleading because they fail to disclose that Defendants use donations proceeds, in large part, to fund their own operations. Contrary to cutting "extra costs" so that "a higher percentage of your donation goes to help kids," Defendants use a

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

majority of car donation proceeds to instead fund their own expenses and investments, rather than helping kids.

56.    After monetizing donated vehicles through auction or scrapyard sales, Kars4Kids first uses a significant portion of the funds to cover its own expenses and operations, including millions of dollars sent to an office in Israel for "administrative services," and tens of millions of dollars spent each year on its deceptive advertising campaign.

57.    On average from 2019-2022, Kars4Kids used around *54%* of its donation proceeds to either cover its own expenses or retain as investments. The remaining approximately 46% purportedly used to "help kids" was simply transferred to Oorah. According to its 2022 IRS Form 990, Kars4Kids has accumulated assets of $34 million, including $1 million in cash, $15 million in real estate holdings and $15 million in inventory.

58.    But a review of Kars4Kids' Form 990 does not provide the full story. The vehicle donation proceeds then get another "hair cut" when they make their way to Oorah. In 2021, for instance, Kars4Kids transferred *over $66 million* of its more than $121 million in donation proceeds to Oorah (representing around 85% of Oorah's total revenue). Of that amount, Oorah's total "charitable" spending consisted of only *$3.5 million* on "scholarships for students," including to cover tuition to its *own* camps, and *$85,000* as "grants" to various orthodox Jewish organizations (including Congregation Oorah) in New York and New Jersey to "provide assistance to families" and "promote religious education."  Thus, *only 5%* of the $66 million in donation proceeds transferred to Oorah (and 2.9% of the total donation proceeds raised by Kars4Kids) was, in fact, used by Oorah for *any* "charitable" purpose.  The rest was spent on Oorah's operations and expenses or retained as income and investments. According to its 2022 Form 990, Oorah has accumulated assets of over $195 million.

59.    The below chart illustrates the donation proceeds raised by Kars4Kids in 2021-2022 that was ultimately used by Oorah for purported "charitable" purposes, which are indicative of its "charitable" spending over the past several years:

| Year | Donation Proceeds Raised by Kars4Kids | Amount Transferred to Oorah | Amount Used by Oorah for "Charitable" Purposes | Percentage of Total Donation Proceeds |
|------|----------------------------------------|------------------------------|-------------------------------------------------|----------------------------------------|
| 2021 | $121,549,389 | $66,271,957 | $3,579,501 | 2.9% |
| 2022 | $101,321,704 | $45,880,385 | $4,638,722 | 4.5% |

60.　In short, only a miniscule amount of the total donation funds raised by Kars4Kids through Class member vehicle donations, less than 5%, is ultimately used (by Kars4Kids or Oorah) for **any** charitable purpose.  Thus, even if donors were to look at Kars4Kids' reported program spending, without considering (or even knowing about) *Oorah's* additional expenses and investments, they would be left with the significantly false impression that considerably more of their charitable donations are going to benefit "kids" than is the case.

61.　By failing to inform potential donors that their donations would be used, in large part, to fund Kars4Kids' *and* Oorah's significant expenses and investments rather than for charitable purposes, Kars4Kids' ads misled and deceived donors who, like Plaintiff, would not have donated had they known the truth about Defendants' scheme.

**C. State Attorney General and Other Actions Against Defendants**

62.　Defendants are acutely aware that their commercials are, by design, likely to deceive and mislead reasonable donors. Shortly after releasing their Kars4Kids radio ads nationwide, Defendants' conduct spawned multiple governmental investigations by state attorney generals into the misleading nature of the ads. In January 2009, Kars4Kids (then operating under JOY) and Oorah settled an action with the Pennsylvania Office of the Attorney General that accused the two organizations of misleading Pennsylvania donors about the use of their donations. According to the settlement agreement, Kars4Kids and Oorah, using substantially similar ads still broadcast nationwide today, "solicited for contributions in Pennsylvania through a vehicle donation program in order to benefit disadvantaged children, but failed to properly inform donors that their donations would only benefit services for children of certain religious affiliations." *See* Press Release, Pennsylvania Office of Attorney General, *Attorney General Corbett Announces $65,000 Settlement With Two New Jersey Charities* (Jan. 30, 2009). The action further alleged that

1   Kars4Kids solicited for charitable contributions without being properly registered with the

2   Pennsylvania Department of State and failed to include state-required disclosures in radio, print

3   and Internet solicitations. The settlement required Kars4Kids' parent company, JOY, to pay

4   $45,000 in restitution, along with $10,000 in civil penalties and $10,000 in investigative costs and

5   add detailed disclosures to its Pennsylvania solicitations disclosing the religious nature of its and

6   Oorah's programs.

7        63.   Later that year, in April 2009, Kars4Kids (still operating under JOY) settled another

8   action with the Oregon Office of the Attorney General that similarly accused it of deceiving

9   Oregon donors about the use of their donations by failing "to disclose that the organization did not

10   benefit needy children generally, but instead directed its efforts to a narrow religious purpose."

11   *See* Press Release, Oregon Department of Justice, *Attorney General John Kroger Cracks Down on*

12   *Out-of-State Charity Seeking Vehicle Donations* (Apr. 15, 2009). The Oregon Department of

13   Justice also alleged that Kars4Kids misled Oregon donors by making unsubstantiated claims of

14   being a "top rated" charity and failing to disclose that its "free vacation" voucher offer was

15   designed to recruit people to attend timeshare presentations. The settlement required Kars4Kids to

16   register as an Oregon charity, stop offering "free vacations" to Oregon donors, change its

17   solicitations to include adequate disclosure of its religious purpose and pay the state $65,000.

18        64.   Defendants were again investigated by the Minnesota Office of the Attorney General in

19   2017. The Minnesota Attorney General's investigative report confirmed that, while not disclosed

20   in its ads, Kars4Kids simply "acts as the fundraising arm of Oorah" and "does little direct

21   charitable work itself." *See* Press Release, Office of the Minnesota Attorney General, *Swanson*

22   *Issues Compliance Report on Kars4Kids* (May 4, 2017). According to the report, between 2012

23   and 2014, Kars4Kids transferred over 90% of its actual expenditures on charitable programming

24   to Oorah, whose charitable mission was "to promote Orthodox Judaism, primarily to New Jersey

25   and New York children." The report also concluded that Kars4Kids had engaged in financial

26   reporting shenanigans to make it appear to donors that more of its money was spent on charitable

27   programs, as opposed to fundraising and overhead, than was really the case. Finally, the report

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   disclosed that Kars4Kids and Oorah had lost around $9.7 million in donation-funded real estate

2   investments since 2007, most of which were managed by their CEO's cousin.

3   65.   In 2021, a California donor filed an individual lawsuit against Defendants for false and

4   misleading advertising relating to their Kars4Kids commercials.  The donor alleged that

5   Kars4Kids' TV and radio commercials violated California's FAL and UCL because they

6   misrepresented that Kars4Kids would use donation proceeds to help diverse, needy children,

7   particularly in California.  Instead, it used the proceeds to fund Oorah and its religious outreach

8   activities in New York and New Jersey.  Relying on these ads, the plaintiff donated his 2001 Volvo

9   to Kars4Kids believing, based on its ads, that his donation would be used to benefit needy children

10  in California generally. Like Plaintiff here, the plaintiff there alleged that he would not have

11  donated his vehicle had he known the truth about Defendants' purpose and use of his donation.

12  66.   In denying Kars4Kids' motion for summary judgment in the California case, the court

13  there found, under facts nearly identical to those here, that: (i) the plaintiff had demonstrated

14  sufficient injury in fact from the loss of his donated car; (ii) the plaintiff's property loss "was

15  caused by [Kars4Kids'] unfair business practice or false advertising;" and (iii) "a reasonable jury

16  could conclude that Kars4Kids' advertising was misleading because it indicated donations would

17  benefit needy children nationwide when it actually benefited primarily children of a particular faith

18  in a particular geographic location."

19  67.   While these investigations and actions unquestionably alerted Defendants to the

20  deceptive and misleading nature of their ads, requiring them to change the ads in Oregon and

21  Pennsylvania to include additional disclosures, Defendants have continued to broadcast their

22  deceptive ads throughout the rest of the country, including in California. The reason is apparent:

23  Kars4Kids would receive significantly less donations, and Oorah significantly less funding for its

24  orthodox outreach activities, if donors knew the truth about Defendants' scheme.

**D.  Defendants Profited from Their Misleading Advertisements and RICO Scheme**

26  68.   Defendants' scheme to defraud donors through misleading and deceptive ads has allowed

27  them to solicit tens of thousands of car donations nationwide from unwitting donors. From 2019

28  to 2022, Kars4Kids received **_over 495,000_** vehicle donations nationwide through its deceptive

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

advertising, a substantial portion of which (around 25% in 2021 alone) were from California donors. Kars4Kids received **over $370 million** in proceeds from the sale of those donated vehicles, **over $185 million** of which (or 99% of Kars4Kids' total charitable spending) was transferred to Oorah to fund its narrow religious purpose in a particular geographic area.

**E. Plaintiff Was a Victim of Defendants' Ongoing Scheme**

69.    Plaintiff saw and heard Defendants' misleading TV solicitation ads numerous times over the past decade.  Based on these TV commercials, Plaintiff reasonably believed that vehicles donated to Kars4Kids would be used to help a diverse group of poor or needy children, particularly in California.

70.    Based on this belief, Plaintiff donated multiple vehicles to Kars4Kids.  Plaintiff's first donation was a 1986 Nissan Sentra in or around 2000.  Plaintiff later donated a 1994 Toyota 4Runner in or around 2013.  At all times, Plaintiff believed, based on Kars4Kids' continuous TV commercials, that his donations would be used to help poor or needy children in California.

71.    In or around November 2023, Plaintiff again contacted Kars4Kids via telephone to donate his 1988 Toyota pickup truck.  At the time of his donation, the pickup truck was running and in drivable condition.  Kars4Kids accepted the donation and arranged over the telephone for Plaintiff's truck to be picked up.  It also informed Plaintiff that his donated truck would be sold at auction in Vallejo, California.

72.    After his vehicle was picked up, Plaintiff contacted Kars4Kids again by telephone in or around November/December 2023 to inquire as to why he had not received a receipt or donation confirmation for tax purposes.  As a result of his inquiry, Plaintiff received an "Official Receipt" by letter informing him that he could deduct up to $1,100, which Kars4Kids claimed was the gross proceeds from the sale of his vehicle.  Regarding the use of his donation, the letter stated only that:

> Your donation makes a difference in the lives of the children we assist. Besides
> giving us the opportunity to help these youngsters and their families, your sincere
> interest in our cause brings us one step closer to making this troubled world a better
> place in which to live.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

The letter made no mention of Oorah, its religious purpose or activities, or the true way Kars4Kids and Oorah would use his donation.

73. At no point during Plaintiff's communications with Kars4Kids did it inform him that his donation would be used to fund Oorah and its geographically limited orthodox "outreach" activities, or to fund Oorah's and Kars4Kids' expenses and investments.  Plaintiff also did not receive a "solicitation or sale for charitable purposes card" pursuant to California Business and Professions Code §§ 17510.3 and 17510.4 or any other information aside from the "Official Receipt" informing him of the way his donation would be used.  Plaintiff would not have donated his vehicles to Kars4Kids had he known the truth about Kars4Kids' and Oorah's undisclosed purpose and use of his donation.

## V.    DEFENDANTS' PARTICIPATION IN THE RICO ENTERPRISE

74.    Each Defendant is a "person" as that term is defined in 18 U.S.C. § 1961(3). Together, they formed an association-in-fact that constitutes an "enterprise," as that term is defined in 18 U.S.C. § 1961(4), for the purpose of carrying out their racketeering activities.

### A.  Defendant Kars4Kids

75.    Kars4Kids used this enterprise to engage in a pattern of racketeering. Continuously since at least 2014 (and before that under JOY), Kars4Kids has created and broadcast deceptive and misleading ads in California and nationwide soliciting charitable vehicle donations to purportedly help a diverse group of needy or disadvantaged children locally and nationwide, while instead funneling those donation proceeds to Oorah to fund its narrow religious purpose of promoting orthodox ideology to Jewish families in a particular geographic area, and to fund its and Oorah's operations. The pattern of racketeering actions Kars4Kids committed include:

    a.  Conspiring with Oorah to solicit vehicle donations through misleading and deceptive advertising to fund Oorah;

    b.  Creating and producing TV, radio, and Internet commercials soliciting charitable vehicle donations that contain material misrepresentations and omissions regarding its purpose and use of donation proceeds;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

c. Broadcasting, or causing to be broadcast, commercials over TV, radio, and Internet wire mediums in California and throughout the country that contain material misrepresentations and omissions regarding its purpose and use of donation proceeds;

d. Failing to disclose to donors that it uses their vehicle donations to: (i) fund Oorah and its narrow religious mission of promoting Jewish orthodoxy, (ii) benefit only families of one religion in one geographic area, and (iii) fund Kars4Kids' and Oorah's significant expenses and investments;

e. Accepting and processing thousands of vehicle donations from donors in California and throughout the country over the telephone and Internet;

f. Contracting with third-party auction houses, scrapyards and towing companies to retrieve, store and sell donated vehicles;

g. Receiving proceeds by wire or mail from third-party auction houses and scrapyards for the sale of donated vehicles;

h. Mailing donors a receipt or other information indicating the amount of potential tax deduction they can claim for their donation and/or a travel voucher for a three-day, two-night "vacation" stay;

i. Using a majority of vehicle donation proceeds to pay for its own significant operating expenses and investments; and

j. Transferring proceeds from vehicle donations to Oorah by mail and/or wire to fund Oorah's orthodox "outreach" activities, expenses and investments.

**B.  Defendant Oorah**

76.    Defendant Oorah similarly used this enterprise to engage in a pattern of racketeering. Continuously since at least 2014 (and before that through JOY), Oorah has used Kars4Kids to solicit vehicle donations, through its misleading and deceptive commercials, for the purpose of funding Oorah's operations and narrow religious activities. The pattern of racketeering actions it committed include:

a. Creating Kars4Kids as its d/b/a to solicit vehicle donations to fund its operations, investments, and orthodox "outreach" activities;

b. Creating, producing, and broadcasting, or causing to be broadcast, over wire mediums the original misleading Kars4Kids "jingle" featured in Kars4Kids' misleading and deceptive commercials;

c. Creating a separate entity, along with its CEO, Mintz, to oversee Kars4Kids' deceptive advertising campaign, first under JOY, then under Kars4Kids Inc.;

d. Conspiring with Kars4Kids to solicit vehicle donations using misleading and deceptive advertising to fund its operations, religious activities, and investments;

e. Continuing to use Kars4Kids' vehicle donations, even after it spun off Kars4Kids as a separate entity;

f. Receiving vehicle donation proceeds from Kars4Kids by mail and/or wire; and

g. Using vehicle donation proceeds from Kars4Kids to pay for its operating expenses, investments, and narrow religious activities.

## VI.   DEFENDANTS' MISLEADING AND DECEPTIVE ADVERTISING

77.    Kars4Kids runs its deceptive TV, radio, and Internet advertisement campaigns to solicit charitable vehicle donations throughout the United States such that the vast majority of individuals who donate, other than those located in Pennsylvania and Oregon, are exposed to the same or similar misleading and deceptive ads.

78.    Plaintiff specifically recalls viewing Kars4Kids' TV commercials and relied on them in donating his vehicles to Kars4Kids.  Based on Kars4Kids misleading advertisements, Plaintiff reasonably believed that his vehicle donations would be used to help needy or disadvantaged children in California, without regard to any racial, ethnic, or religious affiliations.

79.    Kars4Kids was under a duty to Plaintiff and Class members because it made suggestions and representations in its ads that their car donations would be used to help needy or disadvantaged children generally, locally and nationwide, regardless of racial, ethnic, or religious affiliation, but suppressed, concealed, or did not disclose material facts that qualify those representations, namely that the donations would, instead, be used to fund Oorah and its narrow purpose of promoting

Jewish orthodoxy to families of only one religion in one geographic location, and fund Kars4Kids' and Oorah's significant expenses and investments.

80.    These intentional acts were expressly aimed at potential donors in California and nationwide. Kars4Kids runs its misleading and deceptive ads on radio, TV, and Internet stations in California and throughout the country, except Pennsylvania and Oregon.

81.    These omissions and misrepresentations were by design and allowed Kars4Kids and Oorah to collect substantial vehicle donations from unwitting donors. Defendants knew, or by the exercise of reasonable care should have known, that their omissions were deceptive and misleading, and deliberately designed Kars4Kids' commercials to deceive reasonable consumers like Plaintiff and Class members. These misrepresentations could have been corrected by simply informing donors of Kars4Kids' true purpose – to fund Oorah and its geographically limited orthodox "outreach" activities. Indeed, Kars4Kids was required to make similar corrections to its ads broadcast in Pennsylvania and Oregon pursuant to its settlements with those states' attorney generals.

82.    Kars4Kids' omissions and misrepresentations regarding the true use of vehicle donation proceeds were material to donors. A reasonable donor would attach importance to the truth or falsity of Kars4Kids' represented use of donation proceeds in deciding whether to make a vehicle donation. Indeed, it is perhaps the most important factor that a potential donor considers. If donors had known that their car donations would be used primarily to fund a separate organization to support its orthodox "outreach" activities in New York and New Jersey, directly only at Jewish families, they could have made an informed decision about the disposition of their property. Instead, Defendants' false and misleading advertisements caused Plaintiff and Class members to donate their vehicles under false pretenses.

83.    Defendants knew that their Kars4Kids ads were misleading donors. By 2009, Defendants had already settled actions brought by state attorney generals in Pennsylvania and Oregon relating to these same or similar misleading and deceptive ads. Despite these settlements, which required Kars4Kids to include adequate disclosures in their Pennsylvania and Oregon solicitations,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  Kars4Kids has continued to run its misleading and deceptive ads in California and throughout the

2  rest of the country.

3  84.    Plaintiff was damaged by these misrepresentations and omissions individually as

4  described herein, and he relied on them in that he would not have donated his vehicle to Kars4Kids

5  had he been informed of Defendant's scheme. Class members have been similarly damaged by

6  Defendants' material misrepresentations and omissions.

7  **VII.    CLASS ALLEGATIONS**

8  85.    Plaintiff brings this action individually and on behalf of a nationwide Class, pursuant to

9  Federal Rule of Civil Procedure 23, defined as follows:

10  **Nationwide Class**: All persons who, within the applicable statute of limitations until the date

11  notice is disseminated, were exposed to a Kars4Kids TV, radio, or Internet advertisement and

12  who donated a vehicle to Kars4Kids, except those located within Pennsylvania and Oregon.

13  86. Plaintiff also seeks certification of the following sub-class:

14  **California Sub-Class**: All persons who, within the applicable statute of limitations until the

15  date notice is disseminated, were exposed to a Kars4Kids TV, radio, or Internet advertisement

16  and who donated a vehicle to Kars4Kids within California.

17  87.    Excluded from the Classes are Defendants and their affiliates, agents, employees, legal

18  representatives, co-conspirators, successors, subsidiaries, officers, and directors, and any members

19  of their immediate families. Plaintiff reserves the right to modify, change, or expand the various

20  class definitions set forth above, based on discovery and further investigation.

21  88.    The Classes are so numerous that joinder of all members is impracticable. It is apparent

22  that the number of donors injured by Defendants' misleading ads is so large as to make joinder

23  impracticable as the Classes are comprised of thousands of donors geographically dispersed

24  throughout the United States. In its 2022 Annual Report, Kars4Kids reported that in 2022 alone, it

25  received 88,717 vehicle donations nationwide. In 2021, it received around 120,000 vehicle

26  donations nationwide, approximately 30,000 of which were from California donors. While the

27  exact number of potential Class and Sub-Class members for the entire relevant period is currently

28  unknown, such information can be ascertained from Kars4Kids' records.

89.     Common questions of law and fact exist as to all members of the Classes that predominate over any questions affecting solely individual members of the Classes. Among the questions of law and fact common to the Classes are:

        a.     Whether Defendants are persons within the meaning of the RICO statute;

        b.     Whether Defendants formed an enterprise that engages in racketeering activity;

        c.     Whether Defendants violated federal mail and wire fraud laws;

        d.     Whether Defendants' advertisements for the charitable donation of vehicles were materially misleading, or objectively reasonably likely to deceive;

        e.     Whether Defendants engaged in false or misleading advertising;

        f.     Whether Defendants' wrongful conduct was intentional or knowing;

        g.     Whether the alleged conduct constitutes violations of the laws asserted;

        h.     Whether Plaintiff and Class members have suffered damages, and, if so, the nature and extent of those damages;

        i.     Whether Plaintiff's and Class members' injuries are a foreseeable and natural consequence of Defendants' conduct; and

        j.     Whether Plaintiff and Class members are entitled to appropriate remedies, including restitution, damages, and injunctive relief.

90.     Plaintiff's claims against Defendants are typical of Class members' claims because all members sustained damages arising out of Defendants' wrongful conduct as described herein. Plaintiff's and Class members' claims all arise out of Defendants' uniform misrepresentations, omissions, and unlawful, unfair, and deceptive acts and practices related to their solicitation and use of charitable donations, and the relief sought is common.

91.     Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel competent and experienced in class action lawsuits. Plaintiff has no interests antagonistic to or in conflict with those of the Classes and therefore is an adequate representative for the Classes.

92.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable, and it will permit a large

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and burden on the courts that individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, are far superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other Class members would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery. Also, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and possibly conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

93.    Certification of this class action is appropriate because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members. Certification is also appropriate because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate the relief sought on behalf of the Classes as a whole. Certification of Plaintiff's claims for class-wide treatment is also appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

94.    Kars4Kids' records contain the entire universe of potential Class members. Notice to Class members may be accomplished inexpensively, efficiently, and in a manner best designed to protect the rights of all Class members. Class notice can likely be directly sent to individual Class members because Kars4Kids' own records and documents will likely identify all Class members and contain their contact information.

## VIII.   COUNTS

### FIRST CAUSE OF ACTION
**Violation of the Racketeer Influenced and Corrupt Organizations Act
18 U.S.C. § 1961 *et seq.*
(Against all Defendants)**

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

95.  Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

96.  Plaintiff brings this claim against Defendants individually and on behalf of a nationwide Class under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

97.  18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

98.  At all relevant times, Plaintiff was and is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

99.  At all relevant times, Defendants Kars4Kids and Oorah were and are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

100.  At all relevant times, each of the Defendants was, and is, a "person" that exists separate and distinct from the RICO enterprise, described below.

**1.  The RICO Enterprise**

101.  Defendants Kars4Kids and Oorah created an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). These organizations bonded together to form a distinct enterprise with a common purpose through which they could conduct a pattern of racketeering activity.

102.  Defendants' Enterprise has the common goal of defrauding Plaintiff and Class members out of tens of thousands of donated vehicles through a sustained and well-orchestrated scheme of deceptive conduct and material misrepresentations made in connection with Kars4Kids' charitable solicitation efforts, to funnel donations proceeds to Oorah.

103.  The members of the Enterprise, Kars4Kids and Oorah, have long-standing and ongoing relationships rooted in common ownership, common control, ongoing business dealings, and a mutual interest and participation in the common (criminal) activities.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

104.  The Enterprise has longevity sufficient to permit Defendants to pursue its goal of defrauding Plaintiff and Class members for Defendants' benefit. The Enterprise has been operating as a racketeering enterprise since at least 2014 (and prior under JOY), when Defendants formed Kars4Kids as a separate, distinct entity with the purpose of soliciting charitable vehicle donations through misleading and deceptive TV, radio, and Internet ads on Oorah's behalf. Defendants used the Enterprise to funnel Plaintiff's and Class members' donation proceeds, obtained under false pretenses, to Oorah to fund its expenses, investments, and narrow religious activities. The Enterprise qualifies as a close-ended enterprise because the predicate acts occurred over a period exceeding three years (from 2014 to the date suit was filed). It also qualifies as an open-ended enterprise, in that it was actively continuing to commit predicate fraudulent acts as of the date this lawsuit was filed. Defendants' past conduct by its nature poses a threat of repetition because it has been ongoing throughout the past decade and has continued post-suit.

105.  The Enterprise is organized as a cohesive group with specific and assigned responsibilities. It has been structured to operate as a unit to accomplish the common goals and purposes of their criminal scheme. Each of the Defendants knew of the existence of and conducted or participated in the operation or management of, the Enterprise and its affairs.

106.  Defendants agreed to – and did – operate the Enterprise through a pattern of racketeering activity, including multiple related acts of wire fraud and mail fraud, as described herein.

107.  Defendants had a common purpose – to defraud potential donors into donating vehicles under false pretenses to fund Oorah. Kars4Kids and Oorah both benefited financially from doing so. As a result of their fraudulent conduct, Kars4Kids was able to obtain significantly more vehicle donations, which it funneled to Oorah to fund its narrow religious activities. Defendants also used the ill-gotten donation proceeds, in large part, to pay for their own expenses and investments.

108.  At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c). The Enterprise regularly participated in TV, radio, and Internet advertising mediums, accepted and processed vehicle donations nationwide, facilitated the auction and sale of donated vehicles nationwide, and held, transferred, and used donation funds and assets for Defendants' undisclosed and misrepresented purposes.

## 2. Pattern of Racketeering Activity

109. Defendants conducted or participated in, directly or indirectly, the management or operation of the Enterprise and its affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c); to wit, they have consistently and regularly committed multiple acts of racketeering activity spanning a period since at least 2014 (and prior) to the present, and with the substantial threat of these racketeering activities continuing. These multiple acts shared a common or related purpose, goal, result, participants, victims, and method of commission, as described below and throughout this Complaint.

110. Defendants engaged in a common scheme to defraud Plaintiff and Class members through deceptive and misleading advertising into donating vehicles to Kars4Kids and funnel their ill-gotten donation proceeds to Oorah. The ultimate objective of Defendants' scheme was and is to deceive and induce Plaintiff and Class members into unwittingly donating their vehicles – purportedly to help local needy or disadvantaged children generally – to fund Oorah instead surreptitiously and its orthodox "outreach" activities, and fund Defendants' own expenses and investments. This scheme directly benefited both Kars4Kids and Oorah, who share common control, leadership and (undisclosed) purpose, individually and collectively.

111. Defendants accomplished their scheme to defraud Plaintiff and the Classes by regularly and systematically misrepresenting, concealing, and/or failing to disclose material information to Plaintiff and the Classes about their purpose and use of vehicle donation proceeds, and systematically deceiving Plaintiff and the Classes about their activities, their coordination between one another, and the true nature of their fraudulent business practices.

112. In furtherance of their scheme, Defendants committed multiple acts of wire fraud, in violation of 18 U.S.C. § 1341, and mail fraud, in violation of 18 U.S.C. § 1343. These acts include transmitting, or causing to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, videos and sounds, and also causing matters and things to be placed in a post office or authorized depository, or depositing or causing to be

deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

    a.  Advertisements broadcast over TV, radio, and Internet wire mediums in California and throughout the country that contained material misrepresentations and omissions regarding Defendants' purpose and use of donation proceeds;

    b.  Telephone calls, emails, and online communications between Kars4Kids and Class members, including Plaintiff, regarding vehicle donations and processing of vehicle donations;

    c.  Communications by wire or mail between Kars4Kids and Class members, including Plaintiff, regarding the amount of potential tax deductions donors can claim for their donations and/or a travel voucher for a three-day, two-night "vacation" stay;

    d.  Emails, telephone calls, and other communications by wire or mail between Kars4Kids and third-party auction houses, scrapyards, and towing companies regarding the retrieval, storage and sale of donated vehicles;

    e.  Funds transferred to Kars4Kids by wire or mail from third party auction houses and scrapyards for the sale of donated vehicles;

    f.  Emails, telephone calls, and other communications by wire or mail between and among each of the Defendants facilitating the transfer of donation proceeds from Kars4Kids to Oorah, and otherwise promoting or furthering the scheme to defraud;

    g.  Funds transferred by wire or mail from Kars4Kids to Oorah, with the intent that the funds be used for purposes misrepresented and omitted in Kars4Kids' solicitation ads; and

    h.  Funds transferred by wire or mail between and among the Defendants and third parties, with the intent that those funds be used to promote, conduct, or engage in the Defendants' criminal activities, or otherwise promote or further the scheme to defraud, with or without those third parties' knowledge of the true purpose of those transactions.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### 3.  Injury and Causation

113.  As described throughout this Complaint, Defendants' material misrepresentations and omissions have caused Plaintiff and the Class substantial damages and loss of property. The damages to Plaintiff and the Class were foreseeable, contemplated and intended by Defendants.

114.  As a direct and proximate result of Defendants' misleading and deceptive advertising, Plaintiff and Class members have suffered injury in fact and have lost money or property from their vehicle donations. As alleged herein, Plaintiff would not have donated his vehicles to Kars4Kids had he known the truth about Defendants' scheme and suffered injury in fact and lost money or property because of Defendants' conduct. Plaintiff suffered his injuries at the time he donated his vehicles under false pretenses, as well as when Kars4Kids transferred and/or used the proceeds from his vehicle donations for purposes other than those represented. Class members have been similarly injured by Defendants' misrepresentations and omissions.

115.  Defendants' representations were material to Plaintiff's and Class members' decisions to donate to Kars4Kids, and a reasonable person would attach importance to the truth or falsity of Defendants' representations in determining whether to donate a vehicle to Kars4Kids. Plaintiff and Class members reasonably relied on Kars4Kids' misleading ads, including the misrepresentations and omissions set forth herein, and donated their vehicles to Kars4Kids with the expectation that funds received therefrom would be used to help needy or disadvantaged children generally, locally, and nationwide, without regard to any racial, ethnic or religious affiliation. Plaintiff and Class members made donations that they would not have otherwise made had they been adequately informed or aware that Defendants' representations were false or misleading. At the very least, they could have made an informed decision about the disposition of their property.

116.  Plaintiff and Class members have been and will continue to be injured by Defendants' violations of 18 U.S.C. § 1962(c), in an amount to be determined at trial. Plaintiff's and Class members' injuries are directly, proximately, and reasonably foreseeably resulting from or caused by these violations of 18 U.S.C. 1862(c) and include, but are not limited to, hundreds of millions of dollars in proceeds from Kars4Kids' sale of donated vehicles, lost property and opportunities, and attorneys' fees and costs.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

117.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff and the Class are entitled to recover treble damages, costs, and attorneys' fees from Defendants. The Court should also enter such equitable relief as it deems just and proper to prohibit Defendants' further fraudulent conduct.

**SECOND CAUSE OF ACTION**
**Conspiracy to Violate RICO**
**18 U.S.C. § 1962(d)**
**(Against all Defendants)**

118.  Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

119.  Plaintiff brings this claim against Defendants individually and on behalf of a nationwide Class under RICO, 18 U.S.C. § 1962(d).

120.  Defendants have unlawfully, knowingly, and willfully combined, conspired, and agreed together to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

121.  By and through Defendants' close business relationships with one another, and their close coordination with each other in the affairs of the Enterprise, each Defendant knew the nature of the Enterprise and that it existed beyond the Defendant's individual role.

122.  Oorah initially created Kars4Kids and its misleading ads as part of its own internal fundraising arm for the purpose of soliciting vehicle donations to fund its operations and orthodox "outreach" activities. In 2000, Oorah and its CEO, Mintz, created a separate "charity," also run by Mintz, to oversee and broadcast the deceptive ads, initially under JOY and later under Kars4Kids Inc. Despite this purported separation, Kars4Kids has continued to "serve[] as the fundraising arm on behalf of Oorah," funneling over 99% of its purported charitable spending to Oorah. While not disclosed in their ads, Defendants also continue to share the same headquarters, office space, President and CEO, administrative staff, and common purpose – to "fund[] Oorah."

123.  Through these connections and coordination, each Defendant knew that, together, they were engaged in a conspiracy to commit predicate acts, and that the predicate acts were part of a pattern of racketeering activity, and each agreed to pursue the same criminal objective.

124.  Each Defendant agreed to, and did, facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

violation of 18 U.S.C. § 1962(c). The participation and agreement of each Defendant was necessary to allow the commission of this pattern of racketeering activity. Each Defendant was a knowing, willing, and active participant in the Enterprise and its affairs, and each of the Defendants shared a common purpose, namely, the orchestration, planning, perpetration, and execution of the scheme to defraud Plaintiff and Class members into donating their vehicles under false pretenses for the purpose of funding Oorah. In the absence of agreement, the Enterprise could not have operated as it did. Additional evidence of Defendants' agreement is particularly within their control.

125. Plaintiff and the Class have been and will continue to be injured by reason of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), in an amount to be determined at trial. The injuries to Plaintiff and the Class are directly, proximately, and reasonably foreseeably resulting from or caused by these violations and include, but are not limited to, millions of dollars in proceeds from Kars4Kids' sale of donated vehicles, lost property and opportunities, and attorneys' fees and costs.

126. Pursuant to 18 U.S.C. § 1964(c), Plaintiff and the Class are entitled to recover treble damages, plus costs and attorneys' fees from Defendants. The Court should also enter such equitable relief as it deems just and proper to prohibit Defendants' further fraudulent conduct.

### THIRD CAUSE OF ACTION
### Violation of the California False Advertising Law
### Cal. Bus. & Prof. Code § 17500 *et seq.*
### (Against all Defendants)

127. Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

128. Plaintiff brings this claim individually and on behalf of the California sub-class under California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*.

129. Pursuant to Cal. Bus. & Prof. Code § 17500 *et seq.*, it is unlawful to engage in advertising, including when made with the intent of soliciting charitable donations, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue of misleading . . ."

130.  Defendants violated § 17500 *et seq.*, as described herein, through Kars4Kids' misleading and deceptive ads in California for the solicitation of charitable vehicle donations. Kars4Kids' ads are, by design, intended to mislead potential donors to believe that Kars4Kids will use their donations to benefit needy or disadvantaged children in California, without regard to any particular racial, ethnic, or religious affiliation. These representations are misleading and deceptive because they fail to inform donors that, instead, Kars4Kids uses their donations almost exclusively to: (i) fund Oorah and its orthodox "outreach" activities; (ii) benefit non-California residents of only one religion; and (iii) fund Kars4Kids' and Oorah's significant expenses and investments. Defendants' acts and omissions are likely to deceive, and have in fact deceived, the general donating public.

131.  Kars4Kids runs its deceptive advertising campaign to solicit charitable vehicle donations on radio and TV stations and the Internet throughout California such that the vast majority of California residents who donate are exposed to the same or similar misleading and deceptive ads.

132.  Defendants knew, or by the exercise of reasonable care should have known, that their representations and omissions were untrue and misleading, and deliberately made the misrepresentations and omissions to deceive reasonable donors like Plaintiff and the California sub-class members. Since at least 2009 and as recently as 2021, Defendants have been acutely aware that their Kars4Kids' ads were, by design, deceiving and misleading reasonable donors based on multiple state attorney general investigations, settlements and other civil actions relating to the misleading nature of their ads.

133.  Defendants engaged in these misleading and deceptive advertising practices to increase their donation revenues for the purpose of funding Oorah. Defendants knew that Kars4Kids would receive significantly less vehicle donations, and Oorah significantly less funding for its orthodox "outreach" activities, if donors knew the truth about Defendants' purpose and use of their donations.

134.  As a direct and proximate result of Defendants' misleading and deceptive advertising, Plaintiff and the California sub-class members have suffered injury in fact and have lost money or property from their vehicle donations. As alleged herein, Plaintiff would not have donated his vehicles to Kars4Kids had he known the truth about Defendants' scheme and suffered injury in

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

fact and lost property or money because of Defendants' conduct. Plaintiff suffered his injuries at the time he donated his vehicles under false pretenses, as well as when Kars4Kids transferred the funds to Oorah and/or used the proceeds from his vehicle donations for purposes other than those represented. The California sub-class members have been similarly injured by Defendants' misrepresentations and omissions.

135. Defendants' representations were material to Plaintiff's and the California sub-class members' decisions to donate to Kars4Kids, and a reasonable person would have attached importance to the truth or falsity of Defendants' representations in determining whether to donate their vehicle to Kars4Kids. Plaintiff and the California sub-class members reasonably relied on Kars4Kids' misleading ads, including the misrepresentations and omissions set forth above, and donated their vehicles to Kars4Kids with the expectation that funds received therefrom would be used to help needy or disadvantaged children generally, particularly in California. Plaintiff and the California sub-class members made donations that they would not have otherwise made had they been adequately informed or aware that these representations were false. At the very least, they could have made an informed decision about the disposition of their property.

136. **Conspiracy**: Defendants conspired to commit the FAL violations alleged herein. Defendants agreed together to commit and benefit from these wrongful acts and intended that these wrongful acts be committed. Such an agreement is implied by Defendants' conduct and can be inferred from the nature of the acts performed.

137. Oorah initially created Kars4Kids and its misleading ads as part of its internal fundraising arm for the purpose of soliciting vehicle donations to fund its operations and orthodox "outreach" activities. In 2000, Oorah and its CEO, Mintz, created a separate "charity," also run by Mintz, to oversee and broadcast the deceptive ads, initially under JOY and later under Kars4Kids Inc. Despite this purported separation, Oorah and Kars4Kids continued to share the same headquarters, office space, President and CEO, administrative staff, and common purpose – to "fund[] Oorah." Defendants agreed and conspired for Kars4Kids to continue broadcasting misleading and deceptive ads for the solicitation of vehicle donations and, through these ads, to continue to

1   "serve[] as the fundraising arm on behalf of Oorah," funneling over 99% of its purported charitable

2   spending to Oorah to fund its narrow religious mission, operations and investments.

3   138.   Through these connections and coordination, each Defendant knew that, together, they

4   were engaged in a conspiracy to disseminate false and misleading ads in violation of FAL, and

5   each agreed to pursue this common objective. Each Defendant agreed to, and did, facilitate,

6   conduct, and participate in the conspiracy. The participation and agreement of each Defendant was

7   necessary to perpetuate the misleading and deceptive advertising alleged herein. Each Defendant

8   was a knowing, willing, and active participant in the conspiracy, and each Defendant shared a

9   common purpose, namely, the orchestration, planning, perpetration, and execution of the scheme

10   to defraud Plaintiff and the California sub-class members into donating their vehicles under false

11   pretenses for the purpose of funding Oorah. In the absence of agreement, the conspiracy could not

12   have operated as it did. Additional evidence of Defendants' agreement is particularly within their

13   control.

14   139.   Plaintiff and the California sub-class members have been and will continue to be injured

15   by reason of Defendants' FAL violations, in an amount to be determined at trial. The injuries to

16   Plaintiff and the California sub-class are directly, proximately, and reasonably foreseeably

17   resulting from or caused by these violations and include, but are not limited to, millions of dollars

18   in proceeds from Kars4Kids' sale of donated vehicles, lost property and opportunities, and

19   attorneys' fees and costs.

20   140.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and the California sub-class are

21   entitled to restitution and injunctive relief from Defendants. The Court should also enter such

22   equitable relief as it deems just and proper to prohibit Defendants' further fraudulent conduct.

23   **FOURTH CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**
24   **Cal. Bus. & Prof. Code § 17200 *et seq.***
**(Against all Defendants)**
25

26   141.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth

27   fully herein.

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

142.  Plaintiff brings this claim individually and on behalf of the California sub-class under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

143.  The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, or untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

### 1.  Defendants' "Unfair" and "Fraudulent" Business Acts and Practices

144.  Defendants committed "unfair" and "fraudulent" business acts or practices by, among other things: (1) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the California sub-class members; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the California sub-class members; and (3) engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Complaint.

145.  The utility of Defendants' conduct as described herein is nonexistent. There is no utility to deceiving and misleading potential donors as to a charity's true purpose and use donation proceeds. The harm to potential donors caused by this conduct, by contrast, is significant. Defendants' conduct described herein not only deprived donors of the ability to make informed decisions about their property, but also caused them to donate their vehicles to Kars4Kids under false pretenses and, thereby, unwittingly support a separate, undisclosed organization – Oorah – and its promotion of orthodox ideology in a limited geographic area. Defendants' conduct deprived donors of both their property and alternative options for their donations.

146.  Defendants' conduct as described in this Complaint is also immoral, unethical, oppressive, and unscrupulous, as well as substantially injurious to Plaintiff and the California sub-class. This is particularly evidenced by the ongoing nature of Defendants' scheme, despite multiple prior actions by state attorney generals against Defendants for this same or similar conduct in other states.

147.  Defendants' conduct as described in this Complaint also offends established public policies. As detailed herein, Defendants' unfair and fraudulent practices include disseminating

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

misleading and deceptive advertisements for the solicitation of charitable vehicle donations and using those donations for misrepresented and undisclosed purposes. Defendants' conduct violated numerous civil statutes, as described further herein. Those statutes exist for a reason: to protect consumers from unfair marketing practices. Such protections are especially important here, where a purported "charity" deceives unwitting donors into relinquishing control over their money or property.

### 2. Defendants' "Unlawful" Business Acts and Practices

148. Defendants' conduct as described in this Complaint was, and continues to be, unlawful. The law violations set forth herein serve as predicate violations under the UCL.

149. As detailed in Count Three and incorporated herein, Defendants' conduct violated California's FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*

150. As detailed in Counts One and Two and incorporated herein, Defendants' conduct violated RICO, 18 U.S.C. § 1961 *et seq.*

151. As detailed in Counts One and Two and incorporated herein, Defendants committed and conspired to commit multiple counts of wire fraud in violation of 18 U.S.C. § 1343.

152. As detailed in Counts One and Two and incorporated herein, Defendants committed and conspired to commit multiple counts of mail fraud in violation of 18 U.S.C. § 1341.

153. Defendants' conduct also violated Cal. Govt. Code § 12599.6, which prohibits charitable organizations and commercial fundraisers for charitable purpose from misrepresenting "the purpose of the charitable organization or the nature or purpose or beneficiary of a solicitation" through "words or conduct or failure to disclose a material fact." It also prohibits the use of "any unfair or deceptive acts or practices or engaging in any fraudulent conduct that creates a likelihood of confusion or misunderstanding," and "representing directly or by implication that a charitable organization will receive an amount greater than the actual net proceeds reasonably estimated to be retained by the charity for its use."

154. As detailed in Count Three and throughout this Complaint, Kars4Kids disseminated misleading and deceptive ads in California for the solicitation of charitable vehicle donations. Kars4Kids' ads are, by design, intended to mislead potential donors to believe that their donation

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

will be used by Kars4Kids to benefit needy or disadvantaged children in California, without regard to any particular racial, ethnic, or religious affiliation. These representations are misleading and deceptive because they fail to inform donors that, instead, their donations are used almost exclusively to: (i) fund Oorah and its orthodox "outreach" activities; (ii) benefit non-California residents of only one religion; and (iii) fund Kars4Kids' and Oorah's significant operations and investments.

155. Defendants' conduct also violated Cal. Bus. & Prof. Code §§ 17510.3 and 17510.4, which require that, after a charitable donation is made in California, a "solicitation or sale for charitable purposes card shall be mailed to or otherwise delivered to the donor." The card must contain certain information, including "[t]he name and address of the combined campaign, each organization, or fund on behalf of which all or any party of the money collected will be utilized for charitable purposes," or, "[i]f there is no organization or fund, the manner in which the money collected will be utilized for charitable purposes." The receipts Kars4Kids mailed to donors post-donation failed to include this required information and, instead, furthered Defendants' scheme to defraud by failing to disclose that donation proceeds would be used to fund Oorah and its geographically limited orthodox "outreach" activities and Kars4Kids' and Oorah's significant expenses and investments.

### 3. Defendants' Misleading and Deceptive Advertising

156. As detailed in Count Three and throughout this Complaint, Defendants disseminated misleading and deceptive ads in California for the solicitation of charitable vehicle donations. Kars4Kids' ads are designed to make potential donors believe that their donation will be used by Kars4Kids to benefit needy or disadvantaged children in California, without regard to any racial, ethnic, or religious affiliation. These representations are misleading and deceptive because they fail to inform donors that, in fact, their donations are instead used almost exclusively to: (i) fund Oorah and its orthodox "outreach" activities; (ii) benefit non-California residents of only one religion; and (iii) fund Kars4Kids' and Oorah's significant operations and investments.

157. Kars4Kids broadcasts its deceptive advertising campaign to solicit charitable vehicle donations on radio, TV, and Internet stations throughout California such that the vast majority of

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

California residents who donate are exposed to the same or materially similar misleading and deceptive ads.

158. Defendants knew, or by the exercise of reasonable care should have known, that their representations and omissions were deceptive and misleading, and deliberately made the misrepresentations and omissions to deceive reasonable donors like Plaintiff and the California class members. Since at least 2009 and as recently as 2021, Defendants have been acutely aware that their Kars4Kids' ads were, by design, deceiving and misleading reasonable donors based on multiple state attorney general investigations, settlements and other civil actions relating to the misleading nature of their ads.

159. There were reasonable alternatives to further Defendants' legitimate business interests other than the conduct described herein. For example, Kars4Kids could have corrected its misrepresentations by disclosing in its advertisements its true purpose and use of donation proceeds – to fund Oorah and its narrow religious purpose. Indeed, Kars4Kids was already required to change its advertisements in Pennsylvania and Oregon to include similar disclosures pursuant to Defendants' settlements with those states' attorney generals.

160. Defendants engaged in these misleading and deceptive advertising practices to increase their donation revenues. Defendants knew that Kars4Kids would receive significantly less vehicle donations, and Oorah significantly less funding for its orthodox "outreach" activities, if donors knew the truth about Defendants' scheme and use of their donations.

161. As a direct and proximate result of Defendants' misleading and deceptive advertising, Plaintiff and the California sub-class members have suffered injury in fact and have lost money or property from their vehicle donations. As alleged herein, Plaintiff would not have donated his vehicles to Kars4Kids had he known the truth about Defendants' scheme and suffered injury in fact and lost money or property because of Defendants' conduct. Plaintiff suffered his injuries at the time he donated his vehicles under false pretenses, as well as when Kars4Kids transferred the proceeds to Oorah and/or used the proceeds from his vehicle donations for purposes other than those represented. California sub-class members have been similarly injured by Defendants' misrepresentations and omissions.

162. Defendants' representations were material to Plaintiff's and the California sub-class members' decisions to donate to Kars4Kids, and a reasonable person would attach importance to the truth or falsity of Defendants' representations in determining whether to donate a vehicle to Kars4Kids. Plaintiff and the California sub-class members reasonably relied on Kars4Kids' misleading ads, including the misrepresentations and omissions set forth above, and donated their vehicles to Kars4Kids with the expectation that funds received therefrom would be used to help needy or disadvantaged children generally, particularly in California. Plaintiff and the California sub-class members made donations that they would not have otherwise made had they been adequately informed or aware that Defendants' representations were false. At the very least, they could have made an informed decision about the disposition of their property.

163. The unfair, unlawful, and fraudulent competitive practices described herein present a continuing threat to Plaintiff and the California sub-class members in that Defendants persist and continue to engage in these practices and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Under California Business & Professions Code § 17203, Plaintiff is entitled to injunctive relief ordering Defendants to cease their unfair competitive practices, and Plaintiff and the California sub-class members are entitled to restitution of the entirety of Defendants' revenues associated with their unlawful acts and practices, or such portion of those revenues as the Court may find equitable.

164. **Conspiracy**: Defendants conspired to commit the UCL violations alleged herein. Defendants agreed together to commit and benefit from these wrongful acts and intended that these wrongful acts be committed. Such an agreement is implied by Defendants' conduct and can be inferred from the nature of the acts performed.

165. Oorah initially created Kars4Kids and its misleading jingle as part of its internal fundraising arm for the purpose of soliciting vehicle donations to fund its operations and narrow religious mission. In 2000, Oorah and its CEO, Mintz, created a separate "charity," also run by Mintz, to oversee and broadcast the deceptive ads, initially under JOY and later under Kars4Kids Inc. Despite this purported separation, Oorah and Kars4Kids continued to share the same

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

headquarters, office space, President and CEO, administrative staff, and common purpose – to "fund[] Oorah." Defendants agreed and conspired for Kars4Kids to continue broadcasting misleading and deceptive ads for the solicitation of vehicle donations and, through these ads, to continue to "serve[] as the fundraising arm on behalf of Oorah," funneling over 99% of its purported charitable spending to Oorah to fund its narrow religious mission, operations and investments.

166.   Through these connections and coordination, each Defendant knew that, together, they were engaged in a conspiracy to disseminate false and misleading ads in violation of the UCL, and each agreed to pursue this common objective. Each Defendant agreed to, and did, facilitate, conduct, and participate in the conspiracy. The participation and agreement of each Defendant was necessary to perpetuate the misleading and deceptive advertising and UCL violations alleged herein. Each Defendant was a knowing, willing, and active participant in the conspiracy, and each Defendant shared a common purpose, namely, the orchestration, planning, perpetration, and execution of the scheme to defraud Plaintiff and the California sub-class members into donating their vehicles under false pretenses for the purpose of funding Oorah. In the absence of agreement, the conspiracy could not have operated as it did. Additional evidence of Defendants' agreement is particularly within their control.

167.   Plaintiff and the California sub-class members have been and will continue to be injured by reason of Defendants' UCL violations, in an amount to be determined at trial. The injuries to Plaintiff and the California sub-class are directly, proximately, and reasonably foreseeably resulting from or caused by these violations and include, but are not limited to, millions of dollars in proceeds from Kars4Kids' sale of donated vehicles, lost property and opportunities, and attorneys' fees and costs.

168.   Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204, Plaintiff and the California sub-class are entitled to restitution and injunctive relief from Defendants. The Court should also enter such equitable relief as it deems just and proper to prohibit Defendants' further fraudulent conduct.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class and Sub-Class defined above, appointing Plaintiff as representative of the Classes, and designating his attorneys as Class Counsel;

B. Grant injunctive relief and/or declaratory relief, as permitted by law or equity, including an order prohibiting Defendants from engaging in the unfair, fraudulent, and unlawful acts described above;

C. Award to Plaintiff and Class members restitution and/or other equitable relief, including without limitation disgorgement of all revenues, profits, and unjust enrichment that Defendants obtained from Plaintiff and the Classes as a result of their unlawful, unfair, and deceptive business practices described herein;

D. Award Plaintiff and Class members treble damages for the amount of damages they have sustained, plus the cost of this suit, including reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(c) and (d);

E. Award post-judgment interest on such monetary relief;

F. Award reasonable attorneys' fees and costs; and

G. Grant such further relief that this Court deems appropriate.

**JURY DEMAND**

Plaintiff, individually and on behalf of the putative Classes, demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  April 23, 2024                **KELLER GROVER LLP**


By:   /s/ *Eric A. Grover*
ERIC A. GROVER
*Attorneys for Plaintiff*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861